UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF                                    MISCELLANEOUS
DOROTHY L. TARVER
LA BAR ROLL NO.: 29714                             NO. 24-MC-96

<u>ORDER OF SUSPENSION</u>

Having provided Attorney Dorothy L. Tarver with (1) a notice of the possibility of sanctions for her willful failure to comply with this Court's Local Rules and the Louisiana Rules of Professional Conduct, and (2) an opportunity to show cause why sanctions should not be imposed, the Court now determines by clear and convincing evidence that sanctions are warranted based on her conduct in *Boudreaux v. Tower Hill Insurance Company*, No. 3:23-cv-00828-JWD-RLB, more specifically:

- o  Attorney Tarver's continuing to purportedly represent a client after she had taken a leave of absence from her law firm and the practice of law;

- o  Attorney Tarver's continuing to represent a client when she had been ordered by a superior at her law firm to not represent the client, not work on the client's case, not communicate with the client or opposing counsel, and was denied access to the client's file;

- o  Attorney Tarver's entering into a settlement agreement on behalf of a client and thereafter failing to take the steps necessary to complete the settlement, failing to respond to the Motion to Enforce the Settlement Agreement, and failing to communicate with opposing counsel or the Court regarding any issues or problems with respect to doing so;

- o  Attorney Tarver's failing to decline representation and/or withdraw as counsel of record and notify her client when she was allegedly ordered by a superior at her law firm to take a leave of absence and not represent the client, not work on the client's case, not communicate with the client or opposing counsel, and was denied access to the client's file and therefore was unable to provide adequate representation; and

- o  Attorney Tarver's repeatedly failing to follow the Court's orders and failing to appear when ordered to do so.

1

Having provided Attorney Cristobal M. Galindo with (1) a notice of the possibility of sanctions for his willful failure to comply with this Court's Local Rules and the Louisiana Rules of Professional Conduct, and (2) an opportunity to show cause why sanctions should not be imposed, the Court now determines that, despite his objection to the contrary, the Court has jurisdiction over him for purposes of this disciplinary proceeding.[1] The Court further finds by clear and convincing evidence that sanctions are warranted as to him and his firm, the Galindo Law Firm,[2] based on Galindo's conduct as the firm's managing partner in connection with his role in *Boudreaux v. Tower Hill Prime Insurance Company*, No. 3:23-cv-00828-JWD-RLB.[3] More specifically, the conduct warranting sanctions against Galindo and GLF includes:

- o Attorney Galindo's allowing a lawyer in his firm (Tarver) to represent a client of the firm (or at least to be shown on the record as representing the client) when that lawyer was ordered by Galindo to take a leave of absence, was ordered by Galindo to not work on the client's case, was prohibited by Galindo from communicating with the client or opposing counsel, and was denied access to the client's file by Galindo;

- o Attorney Galindo's failure to communicate to the client that the lawyer assigned to the client's case (Tarver) had been ordered to take a leave of absence, was prohibited from working on her case or communicating with the client or opposing counsel, and was denied access to the client's file;

- o Attorney Galindo's failure (individually or though members of his firm) to decline representation of the client and/or his failure to have Attorney Tarver and his firm withdraw as counsel of record and notify the firm's client when the attorney assigned to the case was ordered by Galindo to not represent the client, not work on the case, not communicate with the

---

[1] Galindo personally responded to this Court's initial Order to Show Cause, both in writing through counsel, (*In re Dorothy Tarver,* No. 24-mc-00096 [hereinafter 24-mc-96], Doc. 22), and by providing sworn testimony at the hearing, (24-mc-96, Doc. 30, Tr. at 22–44), and raised no jurisdictional objection. However, Galindo now objects to this Court's jurisdiction over him personally. (24-mc-96, Doc. 41 at 1–2 n.1.) The issue of the Court's jurisdiction over Galindo is taken up elsewhere in this ruling. Despite his jurisdictional objection, Galindo concedes that, by his conduct, both he and his law firm violated the Louisiana Rules of Professional Conduct in this matter. (*Id*. at 1, 4–5, and 10.)

[2] Galindo and GLF make no objection as to the Court's jurisdiction over GLF and even offer the Court advice on what they believe would be an appropriate sanction against GLF. (24-mc-96, Doc. 41 at 9–10.)

[3] For the sake of convenience, the docket number will be referred to as 23:828.

client or opposing counsel, and was denied access to the client's file and therefore would be unable to provide adequate representation;

o   Attorney Galindo's failure as managing partner of the Galindo Law Firm to "make reasonable efforts to ensure that the firm ha[d] in effect measures giving reasonable assurance that all lawyers in the firm [including Attorney Tarver and Attorney Harris] conform[ed] to the Rules of Professional Conduct," per Louisiana Rule of Professional Conduct 5.1(a);

o   Attorney Galindo's failure as a lawyer with "direct supervisory authority over" Attorney Tarver, to make "reasonable efforts to ensure that [Attorney Tarver] conform[ed] to the Rules of Professional Conduct," per Louisiana Rule of Professional Conduct 5.1(b);

o   Attorney Galindo's "fail[ure] to take reasonable remedial action" when he knew of Attorney Tarver's conduct "at a time when its consequences [could have been] avoided or mitigated," per Louisiana Rule of Professional Conduct 5.1(c)(2); and

o   Attorney Galindo's ratification of Attorney Tarver's conduct in question. *See* Louisiana Rule of Professional Conduct 5.1(c)(1).

Accordingly, for reasons fully explained below,

**IT IS ORDERED** that **DOROTHY L. TARVER'S** admission to practice in the United States District Court for the Middle District of Louisiana is hereby **SUSPENDED** for a period of eleven (11) months, effective as of the date of this Order.

**IT IS FURTHER ORDERED** that **CRISTOBAL M. GALINDO** is precluded from applying for admission to the United States District Court for the Middle District of Louisiana or from supervising attorneys who are admitted in this district for a period of two (2) years, effective as of the date of this Order.

**IT IS FURTHER ORDERED** that **CRISTOBAL M. GALINDO** and the **GALINDO LAW FIRM** will pay the attorney's fees of Jonathan E. Ley and Michael E. Hill of the firm of Kelley Kronenberg, PA, 400 Poydras Street, New Orleans, La. 70130, in connection with the

3

Motion to Enforce Settlement Agreement (Doc. 19), Motion for Status Conference (Doc. 22), and preparation for and attendance at the Zoom status conference held on February 11, 2025 (Doc. 26) in the case of *Boudreaux v. Tower Hill Prime Insurance Company*, No. 3:23-cv-00828-JWD-RLB. The matter of the appropriate attorney's fees to be awarded will be referred to the Magistrate Judge for briefing and recommendation.

**IT IS FURTHER ORDERED** that **CRISTOBAL M. GALINDO** and the **GALINDO LAW FIRM** will pay a fine to the United States District Court for the Middle District of Louisiana in the amount of two thousand five hundred dollars ($2,500.00), which shall be due within thirty (30) days of this Order.

**IT IS FURTHER ORDERED** that **DOROTHY L. TARVER** and **CRISTOBAL M. GALINDO**, will attend an additional eight (8) hours of Professionalism CLE over a twenty-four (24) month period, in addition to the minimum required in their respective states of licensure. Tarver and Galindo will provide a statement attesting to their completion of the Professionalism CLE required by this Order within fourteen (14) days of the end of the twenty-four (24) month period.

**IT IS FURTHER ORDERED** that the United States District Court for the Eastern District of Louisiana and the United States District Court for the Western District of Louisiana, as well as the Louisiana Attorney Disciplinary Board and the Texas Commission for Lawyer Discipline, be notified of this Order.

## I.    BACKGROUND

This disciplinary action arises from conduct in this Court engaged in by respondents Dorothy L. Tarver (hereinafter sometimes referred to as "Tarver") and Cristobal M. Galindo (hereinafter sometimes referred to as "Galindo"), acting on his own behalf and that of the Galindo Law Firm (hereinafter sometimes referred to as "GLF"), primarily in the civil action entitled *Boudreaux v. Tower Hill Prime Insurance Company*, No. 3:23-cv-00828-JWD-RLB.[4] On August 25, 2023, Plaintiff Britney Boudreaux ("Boudreaux") filed suit in this district against her property insurer, Tower Hill Prime Insurance Company ("Tower Hill"), claiming the right to payment for damages to her home caused by Hurricane Ida. (23:828, Doc. 1.) Her attorneys were (a) Harry E. Cantrell, Jr.[5]; and (b) Mark Richard Ladd[6] and Chinwe Onyenekwu, of GLF,[7] 3850 N. Causeway Blvd., Ste. 1520, Metairie, La. 70002. Although GLF is a law firm based in Texas, "[i]n 2021, GLF opened a Metairie office to assist first-part insurance clients—initially as co-counsel with other firms including McClenny Moseley & Associates—before assuming primary responsibility for a substantial number of Hurricane Ida cases in spring 2023." (24-mc-96, *Response to Supplemental Show Cause Order by Cristobal M. Galindo*, Doc. 41 at 1–2.)

On May 14, 2024, Mark Richard Ladd of GLF and Harry E. Cantrell, Jr., moved to withdraw and substitute Tarver "on behalf of the Galindo Law Firm" as counsel of record for

---

[4] As is explained in more detail elsewhere in this ruling, Tarver's conduct was previously the subject of other disciplinary proceedings in this district.

[5] Cantrell is listed on the docket sheet as a member of Cantrell Law Group. On the record, he is, at times, listed under the Galindo Law Firm signature block, (23:828, Doc. 8 at 8); at other times, he is listed as "Of Counsel," (23:828, Doc. 1 at 8; Doc. 16 at 2). He is never listed with a Galindo email address. (*See* 23:828, Doc 1 at 8; Doc. 8 at 8; Doc. 16 at 2.) Galindo and GLF do not address Cantrell in their response to the Order to Show Cause. (*See* 24-mc-96, Doc. 41.)

[6] According to an exhibit presented by Galindo and GLF, Ladd worked for GLF from August 21, 2023, until March 31, 2024, a period of approximately eight months. (24-mc-96, Doc. 41-1 at 1.)

[7] Chinwe Onyenekwu was not and is not admitted to practice in the Middle District of Louisiana. According to an exhibit presented by Galindo and GLF, she worked for GLF from August 17, 2023, until December 31, 2023, a period of less than five months. (24-mc-96, Doc. 41-1 at 1.)

Plaintiff Boudreaux. (23:828, Doc. 16.)[8] On the same day, the Court granted this motion, and Tarver of GLF became counsel for Plaintiff Boudreaux. (23:828, Doc. 17.)

According to a Motion to Enforce Settlement filed by Defendant Tower Hill, "On August 1, 2024, Tower Hill and Plaintiff reached a settlement agreement for $19,000." (23:828, Doc. 19 at 2 (referencing and attaching email exchanges between defense counsel and Tarver and a Settlement Agreement and Release of All Claims (23:828, Doc. 19-1)).) According to the Motion to Enforce Settlement, despite "multiple requests [by defense counsel], Plaintiff has not provided Tower Hill with the executed Release." (23:828, Doc. 19 at 2) (referencing and attaching email exchanges).

Three months later, when Tower Hill filed its Motion to Enforce Settlement on October 31, 2024 (23:828, Doc. 19), this Court issued a briefing schedule calling for Plaintiff to file a response no later than 21 days from the filing of the motion. (23:828, Doc. 20.) Tarver, on behalf of Plaintiff, failed to file an opposition or otherwise respond to Defendant's motion. On February 3, 2025, after another three months had elapsed, Tower Hill filed a Motion for a Status Conference, (23:828, Doc. 22), which the Court granted on February 4, 2025, setting the conference for February 11, 2025, (23:828, Doc. 23).

On February 5, 2025, the day after the Motion for Status Conference was filed, Tarver filed a Motion to Withdraw as counsel for Plaintiff and to substitute GLF attorney Michal J. Harris, (23:828, Doc. 24), which motion was denied without prejudice, (23:828, Doc 25). The denial instructed that "Attorney Dorothy Tarver shall participate in the status conference . . . ." (*Id*.)

At the Status Conference, Attorney Tarver represented the following:

o   Despite continuing to be shown as attorney of record for Plaintiff Boudreaux, "I took a leave of absence from the firm in August [2024]. I haven't been there

---

[8] No mention is made of Chinwe Onyenekwu, presumably because she was not and is not admitted to practice in the Middle District of Louisiana.

6

since I settled the case. I was told I could not work the cases and - - so when something happened - - something popped up, I sent emails. And I actually - - and I asked everyone to have me withdrawn from these cases, because I was also denied access to the documents." (23:828, Doc. 28, Transcript at 6.)

o   Attorney Chris Galindo "precluded [Tarver] from working on the case." (*Id.*, Tr. at 7.)

o   In August 2024, Tarver claims that she "quit" the Galindo Law Firm three times; however, "Chris [Galindo] asked [Tarver] to stay on but take a leave of absence." (*Id.*, Tr. at 14.)

o   Despite still being a member of the Galindo Law Firm, and despite being attorney of record for Plaintiff, "Chris [Galindo] decided it was better for [Tarver] to take a leave of absence" and Tarver "was just not allowed to work on the cases." (*Id.*, Tr. at 9.)

o   When asked whether this left her clients exposed, Tarver responded: "I know that, but I couldn't do anything. Chris wouldn't - - they turned off all the documents. I could not - - I was forbidden to talk to the clients." (*Id.*, Tr. at 14.)

o   Attorney Tarver could not remember whether she secured Plaintiff's consent to settle for the $19,000 sum before agreeing to this settlement on Plaintiff's behalf. (*Id.*, Tr. at 12–13.)

At the status conference, Attorney Michal J. Harris of GLF represented the following:

o   While Harris initially represented to the Court that Tarver was "no longer with [the] law firm" (*Id.*, Tr. at 3), he later stated that Tarver's representations that she was on a leave of absence from GLF and was denied access to clients and files were "accurate." (*Id.*, Tr. at 12.)

o   As to their client Boudreaux and the settlement, "[Boudreaux] has essentially refused to sign any documents that we've sent up until the point in time we haven't been able to get in contact with her." (*Id.*, Tr. at 12.)

## II.   TARVER'S PREVIOUS CONDUCT

At the time the Show Cause Order was issued in this matter, Tarver's conduct had already been the subject of disciplinary concern in this district. On June 14, 2024, in the case of *Hoyt v. Safeco Insurance Company of America*, No. 23-cv-00844-SDD-EWD (hereinafter 23:844),

7

Magistrate Judge Erin Wilder-Doomes admonished Tarver for being habitually absent from court proceedings and issued a strike against her. (23:844, Doc. 29 at 1 n.1.)[9] Judge Wilder-Doomes noted: "Due to Ms. Tarver's repeated failure to appear for conferences as ordered, the Court will issue a strike against her. As explained to Ms. Tarver during the conference, if she accumulates three strikes, the Chief United States District Judge will be notified, and Ms. Tarver may be precluded from practicing in this Court." (*Id.*)

On July 16, 2024, in the case of *Connelley v. State Farm Fire and Casualty Company*, No. 23-cv-00952-BAJ-SDJ (hereinafter 23:952), Judge Brian Jackson of this Court issued an Order to Show Cause why sanctions should not be issued for Tarver's failure to comply with court orders. (23:952, Doc. 23.) The Order to Show Cause was also opened under a miscellaneous docket number: *In Re: Dorothy Tarver*, 24-mc-96-BAJ. (Doc. 1.)[10]

On September 6, 2024, in response to the above Order to Show Cause issued by Judge Jackson, Tarver, through counsel, filed a *Response to Order to Show Cause* (24-mc-96, Doc. 10), in which Tarver represented, *inter alia*, the following:

- She "apologize[d], without limitation or attempted justification, for her failure to comply with the Court's orders and rules. There is no excuse for her conduct, she accepts full responsibility, and she is beyond remorseful for her failings." (*Id.* at 5.)

- "[T]he truth is Ms. Tarver accepted more cases than she could diligently and competently manage, and she regrets this." (*Id.*)

---

[9] The Middle District's "strike" system is an informal way of communicating among the judges and magistrate judges of this district repeated conduct issues or potential disciplinary problems by the same lawyer. If a serious problem with lawyer conduct arises, the judge or magistrate judge may issue the lawyer a warning or "strike". If three such warnings or "strikes" are issued to the same lawyer, the Chief Judge is advised so that formal disciplinary action or other action can be considered.
[10] The present disciplinary proceeding utilizes the same miscellaneous docket number as used in *Connelley* since Tarver is also the subject of this proceeding.

o "Ms. Tarver, and Galindo Law Firm, spent hours, upon hours, over the last few weeks putting processes in place to assure that she will never again fail to comply with a court order and/or miss a deadline set by any court." (*Id.* at 6.)

In the Court's Ruling and Order of January 16, 2025, in *Connelley*, the Court found that Tarver's "unprofessional handling of litigation in federal court . . . is wholly unacceptable and an insult to the Court. For this repeated and inexcusable unprofessionalism, Tarver will be issued her second strike. Tarver is hereby emphatically put on notice that . . . if she accumulates three strikes . . . [she] *may be precluded from practicing before this Court*." (24-mc-96, Doc. 11 at 6 (internal quotation marks and citations omitted).)

Meanwhile, on July 14, 2024, in yet another case, *Gonzales v. Shelter Mutual Insurance Company*, No. 23-cv-00860-BAJ-RLB (hereinafter 25:860), Magistrate Judge Richard Bourgeois wrote **"Ms. Tarver's performance is below the standard required to practice law. She is already the subject of disciplinary proceedings. Her lack of competency in this matter will be considered by the court in determining whether and to what extent sanctions against her may be appropriate."** (23:860, Doc 25 at 2.) However, Magistrate Judge Bourgeois did not issue a strike to Tarver.

## III.    PROCEDURAL HISTORY

On February 24, 2025, the Court issued an Order to Show Cause to Dorothy L. Tarver and Cristobal M. Galindo why sanctions should not be imposed against one or both of them for the violation of certain provisions of this Court's Local Rules and certain provisions of the Louisiana Rules of Professional Conduct. (24-mc-96, Doc. 14.) These included possible violations of Local Civil Rule 83(b)(6) (this Court's adoption of Louisiana's Rules of Professional Conduct); Local Civil Rule 83(b)(10) (requiring attorneys to be familiar with this Court's Local Rules); Local Civil Rule 83(b)(13) (concerning an attorney's continuing representation, withdrawal, and substitution of counsel); and Louisiana Rules of Professional Conduct 1.1 (Competence); 1.3 (Diligence); 1.4

9

(Communication); 1.16 (Declining or Terminating Representation); 3.3 (Candor Toward the Tribunal); and this Court's inherent powers. (*Id.* at 5–6.)

Tarver and Galindo were ordered to file briefs on or before March 13, 2025. (*Id.* at 6.) Briefs were filed by Tarver (24-mc-96, Doc. 27) and by Galindo and the Galindo Law Firm (24-mc-96, Doc. 22). An en banc hearing was held on April 10, 2025, at which hearing Galindo, Tarver, and Michal Harris gave sworn testimony and argument was heard. (24-mc-96, Doc. 29.)

A Supplement to Order to Show Cause was issued on May 7, 2025, which ordered Galindo to provide a written response within fourteen (14) days as to why sanctions should not be imposed on him for failing to follow Local Civil Rules 83(b)(6) and 83(b)(10), and Louisiana Rule of Professional Conduct 5.1 (Responsibilities of Partners, Managers, and Supervisory Lawyers). (24-mc-96, Doc. 32.) On May 19, 2025, Galindo moved to extend by thirty days the deadline to respond to the Supplement to Order to Show Cause, (24-mc-96, Doc. 39), which was granted in part, with the Court granting Galindo an additional ten days to respond, (24-mc-96, Doc. 40). Galindo and GLF filed a response on June 2, 2025. (24-mc-96, Doc. 41.)

## IV.    PRE-HEARING ARGUMENTS OF THE PARTIES

Tarver and Galindo (on his own behalf and on behalf of GLF) filed pre-hearing written responses to the initial Show Cause Order. (24-mc-96, Docs. 22, 27.)

### A. Tarver

Tarver maintains that "shortly" after she enrolled in *Boudreaux* on May 4, 2024, she resigned from GLF "because of the stressful work environment, lack of support, and poor management." (24-mc-96, Doc. 27 at 1–2.)[11]  She argues that she and every New Orleans GLF

---

[11] In her sworn testimony at the hearing, Tarver clarified that she resigned from GLF at "the beginning of August 2024." (24-mc-96, Doc. 30, Tr. at 4.) This is consistent with other evidence offered by Galindo and GLF. (*See, e.g.*, 24-mc-96, Doc. 41-1 at 9–13.)

10

"attorney managed approximately 300 [to] 350 cases, without support staff, which is untenable and destined for failure." (*Id.* at 3.) "By August 2024, the New Orleans office staff consisted of three (3) attorneys, one (1) paralegal, with hundreds of open cases." (*Id.*)

Tarver writes that "the Houston GLF office is staffed by 11 case managers, and one (1) attorney, with little to no interest in assisting the New Orleans office." (*Id.*) She insists that

> [i]nadequate staffing in the New Orleans office significantly impeded timely and consistent communication with the firm's clients, other attorneys, mediators, and the courts. Understaffing led directly to misunderstandings, errors, stress, employee dissatisfaction, and delays in processing the case.

(*Id.*)

Tarver claims that "[o]n numerous occasions [she] begged Chris Galindo to hire attorneys and/or staff [but] he refused." (*Id.*)

After Tarver resigned in early August 2024, Galindo persuaded Tarver to return to GLF but with the understanding that she "take a leave of absence from the firm, but remain on the GLF payroll until the conclusion of the Connolly [sic] disciplinary matter to ensure the continuation of his [presumably, Peter Connelley's] legal representation and that of GLF." (*Id.* at 2 (internal quotation marks omitted).) According to Tarver, under this arrangement, "Galindo denied [Tarver] access to the Boudreaux case documents, denied her communication with Mrs. Boudreaux and with opposing counsel, and precluded her from working on the Boudreaux matter." (*Id.*) In addition, Galindo "denied [Tarver] access to Zoho, GLF's case document database, [Tarver's] GLF email, and precluded [Tarver] from communicating with GLF's clients and opposing counsel." (*Id.*) Therefore, Tarver "was unaware that Mrs. Boudreaux had not executed the Settlement Agreement and Release." (*Id.*)

Tarver contends she made "numerous requests to the Houston staff to withdraw [her] as counsel of record" but, despite these requests, Tarver "remain[ed] as attorney of record in all open

11

federal cases." (*Id.*) She remained on the GLF payroll until January 2025 at which time she was terminated. (*Id.* at 2 n.3.)

### B. Galindo and Galindo Law Firm

In their four-paragraph pre-hearing response, Galindo and GLF maintain that Tarver was hired on April 1, 2024, and terminated on January 20, 2025. (24-mc-96, Doc. 22 at 2.) According to Galindo and GLF, Tarver was "handling approximately 120 cases." (*Id.*) They claim that in August 2024, "Tarver's role as an active attorney handling files was diminished . . . due to issues presented in the Order to Show Cause [in *Connelley*] and other professional considerations." (*Id.*) Contrary to Tarver's representations, they contend that Tarver's "diminished role was to allow Ms. Tarver to finalize cases that she had been handling since she had relationships with those respective clients, but no new cases were being assigned to her." (*Id.*)

The Court notes that neither Galindo nor GLF objected to the jurisdiction of this Court at this time.

### V.    THE HEARING

The en banc hearing was held on April 10, 2025. (24-mc-96, Docs. 29, 30 (Transcript).) In her sworn testimony to the Court, Tarver expressed her "sincere remorse" and took "full responsibility for the issues raised." (24-mc-96, Doc. 30, Tr. at 3.) She stated that the New Orleans GLF office had 1200 cases being handled by three lawyers and that her caseload was "approximately 250 to 350 federal cases." (*Id.* at 4.) She testified that she resigned at "the beginning of August 2024 . . . because of the stress caused by a deeply flawed management structure." (*Id.* at 4; see also *id.* at 55.)

Tarver rejoined GLF but took a "leave of absence" because "Mr. Galindo, through William Gould, an attorney hired by Galindo to manage the New Orleans office remotely from Arizona,

12

stated to me that I was to, quote, take a leave of absence because of the *Connelley* matter. This was tied to the firm providing representation to me for the *Connelley* matter." (*Id.* at 4.) Tarver agreed that "[t]here was a quid pro quo there that [Tarver was] to take a leave of absence as opposed to resigning in exchange for which [Tarver] would be given legal counsel in the *Connelley* case." (*Id.* at 4–5; *see also id.* at 55 ("[A]s a part of this quid pro [arrangement] to be represented[,] [GLF] would keep [Tarver] on in leave of absence, but [Tarver was] not to communicate with clients, [Tarver was] not to work on the file, [she was] not to communicate with counsel, and [she was] not to work on the case.").)

In response to the Court's questioning, she admitted that "the quid pro quo for [her] to collect [her] salary - - because [GLF] froze [her] out of all [her] cases is what [she] told the Court. So what [she] w[as] doing to earn [her] salary from the Galindo Law Firm was staying on to handle the *Connelley* rule to show cause." (*Id.* at 58–59.) Tarver agreed that "[i]t looks like [she] stayed on and [she] agreed not to throw [GLF] under the bus" and that she "took one for the team on the *Connelley* case, and that was why they paid [her] for four months." (*Id.* at 59.)

During the time she was on leave of absence, "Mr. Galindo restricted [Tarver's] access to emails, client files and communication with clients and opposing counsel. Despite being listed as counsel of record, [she] was effectively prevented from practicing. This created a deeply troubling ethical dilemma for [her] that." (*Id.* at 5.) She claimed that she monitored Pacer and forwarded notices to the New Orleans office, "primarily Mr. [Michal] Harris." (*Id.*) She maintains that she "asked on several occasions [for GLF] to withdraw [her] from all federal cases." (*Id.*)

With respect to the specific allegations raised in the Show Cause Order, as to Rules 1.1 and 1.3, Tarver acknowledged her duty to provide competent and diligent representation but argued she "did that by facilitating the *Boudreaux* settlement. But once [she] was sidelined and denied

13

access, [she] could no longer perform those duties. . . . [She] did not abandon [her] responsibilities. [She] was summarily blocked from performing them." (*Id*. at 6.)

Regarding her responsibility for client communications under Rule 1.4, Tarver argues, "I want to be clear, I did not willingly stop communicating with clients. Mr. Galindo instructed me not to contact them. And I no longer had access to the files, phone numbers, and most importantly, the document database." (*Id*.) Regarding her obligation to withdraw under Rule 1.16, she contends that she "did withdraw in the *Boudreaux* matter." (*Id*. at 7.) During questioning however, Tarver conceded that during the six months between taking leave of absence in August 2024 and the time she withdrew as Boudreaux's counsel in February 2025, she had an obligation to withdraw but failed to do so. (*Id*. at 57.)

Joseph F. LaHatte, III, counsel for Galindo and GLF at the hearing, conceded that the clients represented by Tarver were the firm's clients, (*id*. at 17), and that the failure of attorneys at GLF to communicate with defense counsel in the *Boudreaux* matter was a "failing," (*id*. at 13).

Galindo testified that Tarver did express a desire to resign but that he "told her [he] didn't want her to leave. [He] wanted her to stay. [He] wanted to help her. And [he] helped get counsel for . . . [the *Connelley*] show cause hearing." (*Id*. at 23.) Galindo conceded that he took Tarver "off the [Zoho or GLF case management] system" because she had not been utilizing the firm's communication system and because it "prevent[ed] her from working on new clients [and] . . . was a security measure." (*Id*. at 28–29.) Galindo admitted that Tarver was instructed not to communicate with opposing counsel. (*Id*. at 31.) He acknowledged that Tarver did not have access to the firm's system after August 2024. (*Id*. at 35–36.) He conceded that she was asked not to talk to clients. (*Id*. at 40.) He agreed that by denying her access to the case management system, "[he] gave her responsibilities and then [he] made it impossible" for her to carry them out. (*Id*. at 37.)

14

Galindo maintained that once Michal Harris began representing Tarver's former clients, "the Galindo Law Firm was doing a better job." (*Id.* at 40–41.) However, when Galindo was confronted with two instances in which Harris had recently not responded to dispositive motions in other Middle District cases, he conceded that his firm had a "problem." (*Id.* at 40–42 ("Oh, yes, Judge. We do.").)[12]

Galindo conceded that GLF's New Orleans office "had one lawyer at any one time representing hundreds of clients in this Court [the Middle District]." (*Id.* at 43.) Galindo conceded that this made it "difficult" for that single lawyer "to do the right kind of job." (*Id.* at 44.) Galindo admitted that this difficulty was the result of his business model. (*Id.*) He admitted that, as managing partner, it was his responsibility to see that his firm's lawyers had help to handle the cases in federal court. (*Id.* at 34.)

## VI.    POST-HEARING BRIEFING BY GALINDO AND GLF

Following the hearing, Galindo was ordered to respond to a Supplemental Order to Show Cause on the issue of Galindo's possible breach of his supervisory responsibilities over Tarver in violation of Louisiana Rule of Professional Conduct 5.1. (24-mc-96, Doc. 32.) Rule 5.1 states:

> Rule 5.1    Responsibilities of Partners, Managers, and Supervisory Lawyers
>
> (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.
>
> (b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

---

[12] The Court notes that for reasons unrelated to the present facts, on July 3, 2025, The Louisiana Supreme Court granted the Louisiana Office of Disciplinary counsel's Petition for Interim Suspension [of Michal J. Harris] for Threat of Harm. *In re Michal J. Harris*, 2025-B-00843 (La. 7/03/25), 414 So. 3d 418. Pursuant to Middle District Local Rule 83(b)(2), Harris was suspended indefinitely from practice before the Middle District on July 23, 2025. *In the Matter of the Suspension of Michal J. Harris*, No. 25-mc-78, (M.D. La. July 23, 2025).

(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

    (1) The lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

    (2) The lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Louisiana Rule of Professional Conduct 5.1.

For the first time, in post-hearing briefing, Galindo "object[ed] to both (1) this Court's jurisdiction over him, and (2) the imposition of sanctions [against him] without an express basis in substantive law[.]" (24-mc-96, Doc. 41 at 2 n.1.) GLF makes no jurisdictional objection and indeed "acknowledges its violations of Rule 5.1 . . . [and] stands ready to comply with any conditions the Court imposes." (*Id.* at 10.)

Notwithstanding his jurisdictional objection, Galindo admits that both he and GLF "failed to supervise Dorothy Tarver and thereby violated Louisiana Rule of Professional Conduct 5.1." (*Id*. at 1.) "Mr. Galindo and GLF come before this Court with profound regret and sincere remorse for the supervisory failures that led to these proceedings." (*Id*. at 4.)

Galindo "acknowledges that he failed to ensure adequate firm-wide compliance measures under Rule 5.1(a)." (*Id*. at 5.) He admits that GLF "violated Louisiana Professional Conduct Rule 5.1 and failed in its fundamental duty to properly supervise lawyer conduct," (*id*. at 4–5), and that he "failed to make reasonable efforts to ensure Ms. Tarver's compliance with the Rules of Professional Conduct under Rule 5.1(b)," (*id*. at 6).

Regarding the arrangement he created with Tarver in which Tarver was allowed to remain counsel of record but was forbidden to communicate with clients or use the firm's case

management software, he admits that "this arrangement . . . created a representation gap—Ms. Tarver remained counsel of record but lacked adequate access to perform her duties efficiently." (*Id*. at 4.) Galindo "recognizes that immediate substitution of counsel or firm withdrawal would have been a more appropriate response." (*Id*. at 4.) He admits that "[he] gave her responsibilities and then made it impossible for her to do it." (*Id*. at 7 (quoting 24-mc-96, Doc. 30 at 37).)

Galindo, however, maintains that the admitted failures were "inadvertent rather than intentional" and that he relied on "Tarver's twenty years of federal court experience." (*Id*. at 9.) While they "ultimately proved inadequate," Galindo urges that he did attempt to take actions in response to "operational deficits." (*Id*.) He stresses that since the hearing, he has referred many of the firm's Middle District cases to other law firms and, at the time of the briefing, GLF handles only three directly. (*Id*.) He "expresses remorse for these supervisory lapses." (*Id*.)

In terms of sanctions, Galindo urges that:

> Given that GLF now handles only three Middle District matters and has ceased accepting new federal cases in Louisiana, the firm respectfully requests proportionate sanctions. Monetary sanctions would provide accountability while enabling GLF to resolve the remaining client matters efficiently. More severe sanctions would hinder orderly case resolution and harm clients who rely on the firm's continued efforts. . . . GLF stands ready to comply with any conditions the Court imposes and to resolve the three pending Middle District cases without further disruption.

(*Id*. at 9–10.)

## VII.   STANDARD

> "[I]t is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers." *Resolution Trust Corp. v. Bright,* 6 F.3d 336, 340 (5th Cir.1993) (citing *In re Snyder,* 472 U.S. 634, 643–44 [ ] (1985)); *see also Crowe v. Smith,* 151 F.3d 217, 229–30 (5th Cir.1998) (collecting cases); *Flaksa v. Little River Marine Constr. Co.,* 389 F.2d 885, 888 n. 10 (5th Cir.1968) ("The power of a court to discipline members of its own bar can scarcely be doubted seriously. An attorney is under no obligation to seek admission to the bar of a United States district court. . . . But when he does apply and is admitted he

17

secures certain privileges and also assumes definite obligations." (citation omitted)).

*In re Grodner*, 587 F. App'x 166, 169 (5th Cir. 2014).

[T]he Supreme Court and the U.S. Fifth Circuit Court of Appeals have provided clear guidance on the procedures District Courts must follow when considering whether to sanction attorneys for violating court rules. First, "[w]hen a court undertakes to sanction an attorney for violating court rules, it is incumbent upon the sanctioning court to observe scrupulously its own rules of disciplinary procedure." *Matter of Thalheim*, 853 F.2d 383, 390 (5th Cir. 1988). Second, "attorney discipline proceedings require proof only by clear and convincing evidence." *Sealed Appellant 1 v. Sealed Appellee 1*, 211 F.3d 252, 254 (5th Cir. 2000). Finally, where potential sanctions include suspension and/or disbarment, "due process requires notice and an opportunity to be heard." *Id.*; *see also In re Grodner*, 587 F. App'x. 166, 170 (5th Cir. 2014).

*In re Marshall*, No. 3:15-MC-88-JWD, 2016 WL 81484, at *6 (M.D. La. Jan. 7, 2016).

## VIII.  DISCUSSION

### A.  Findings of Fact and Conclusions of Law

Because the jurisdictional issue is informed in part by the facts of this case, Galindo's jurisdictional objection is taken up after this Court's findings of fact. The following facts were established by clear and convincing evidence. Cristobal Galindo was the principal and managing partner of GLF. (24-mc-96, Doc. 30, Tr. at 34.) Tarver was a lawyer employed by GLF working in the firm's New Orleans office from her hiring on April 1, 2024, until she was terminated on January 20, 2025, a period of less than a year. (24-mc-96, Doc. 22 at 2; *see also* 24-mc-96, Doc. 41-1 at 1.) While the exact number of cases is in dispute, Galindo admitted in sworn testimony that Tarver was solely responsible for "hundreds of clients in this Court [the Middle District]." (24-mc-96, Doc. 30, Tr. at 43.) According to Tarver, she was handling 250–350 federal cases. (*Id.*

18

at 4.)[13] And because of "the stress caused by a deeply flawed management structure," she resigned from the firm in early August 2024. (*Id.*; *see also id.* at 55.)

At the time of her resignation, Tarver was already the subject of a July 16, 2024, Order to Show Cause issued in the case of *Connelley v. State Farm Fire and Casualty Company,* 23:952, where she was ordered to show cause why sanctions should not be issued for her failure to comply with Court Orders. (23:952, Doc. 23.) This Order to Show Cause was opened under a miscellaneous docket number: *In Re: Dorothy Tarver*, 24-mc-96-BAJ (Doc. 1).

In order to convince Tarver to return to GLF (albeit on a "leave of absence" basis), Galindo struck a deal with Tarver in which GLF would pay her legal fees in the *Connelley* matter and continue to pay her salary and, in exchange, Tarver would remain an employee of GLF but under specific instructions to no longer represent the clients she formerly represented, to take no actions in their cases, and to not speak to or communicate with her clients or opposing counsel. (*See, e.g.*, 24-mc-96, Doc. 27 at 2; 24-mc-96, Doc. 30, Tr. at 4–5, 28–29, 31, 35–36, 40, 55, 58–60.) She was also denied access to the clients' files, their contact information, and Zoho, GLF's case document database system. (24-mc-96, Doc. 27 at 2.)

The Court notes that Galindo's testimony on their arrangement differs somewhat from Tarver's. In their initial briefing, Galindo and GLF stated that "Tarver's role as an active attorney handling files was diminished . . . due to issues presented in the Order to Show Cause and other professional considerations" and that Tarver's "diminished role was to allow Ms. Tarver to finalize cases that she had been handling since she had relationships with those respective clients, but no

---

[13] In briefing, Galindo stated that Tarver was handling "approximately 120 cases." (24-mc-96, Doc. 22 at 2.) During his sworn testimony Galindo admitted that he "didn't know" the number of cases Tarver was handling but "didn't think" it was several hundred." (24-mc-96, Doc. 30, Tr. at 29.) When asked directly about the maximum number of cases his firm had in the Middle District, he responded "I don't have that [number off the top of my head" but admitted there were "hundreds." (*Id.* at 43; *see also* Galindo's admission that "expecting one lawyer to handle hundreds of cases was 'difficult'" (24-mc-96, Doc. 41 at 3 (quoting 24-mc-96, Doc. 30, Tr. at 68)).) Neither Tarver nor Galindo documented their estimates, but the record generally supports Tarver's estimate.

new cases were being assigned to her." (24-mc-96, Doc. 22 at 2.) This representation is misleading at best given Galindo's sworn concession that Tarver was told not to talk to clients, (24-mc-96, Doc. 30, Tr. at 40), not to communicate with opposing counsel, (*id*. at 31), and was deprived of access to the firm's computer system after August 2024, (*id*. at 35–36).

In sum, the Court accepts Tarver's testimony that because of the "restricted . . . access to emails, client files and communication with clients, despite being listed as counsel of record, [she] was effectively prevented from practicing." (*Id.* at 5.) Her role after the agreement went into effect was to monitor Pacer and pass on notices of importance to "someone in the Houston office." (*Id.*; *see also* 24-mc-96, Doc. 41-1 at 86–91.) Indeed, Galindo admits that the arrangement he orchestrated "creat[ed] an untenable situation that left clients effectively unrepresented while Ms. Tarver remained counsel of record." (24-mc-96, Doc. 41 at 8.)

Galindo argues that this highly unusual arrangement was intended to "address the operational issues," (*id.* at 3), and were "corrective measures" intended to address Tarver's "performance failures," (*id.* at 7). The Court finds this explanation nonsensical and contrary to the credible evidence. It is clear to the Court that Galindo ordered Tarver to quit working on her cases in any meaningful way but nonetheless remain counsel of record so that GLF could maintain control of her defense in the *Connelley* disciplinary matter and ensure her cooperation in connection therewith. In exchange for GLF continuing to pay her salary plus her legal fees in *Connelley*, Tarver agreed to "t[ake] one for the team" in *Connelly* and "not to throw [GLF] under the bus." (24-mc-96, Doc. 30, Tr. at 59.)

However, even if one were to accept Galindo's explanation, Galindo admitted that these "measures created the very problems they were intended to prevent." (24-mc-96, Doc. 41 at 7 ("Galindo deeply regrets that his supervisory decisions contributed to the very problem he sought

20

to prevent."); *see also id*. at 8 (acknowledging that his actions "created the very problem they were designed to solve").) Regardless of Galindo's motive, the bottom line for Boudreaux was that, unbeknownst to her, she was effectively unrepresented for a period of approximately six months. Tarver also admitted as much. When asked whether this arrangement with GLF left her clients exposed, Tarver responded: "I know that, but I couldn't do anything. Chris wouldn't - - they turned off all the documents. I could not - - I was forbidden to talk to the clients." (24-mc-96, Doc. 28, Tr. at 14; *see also* 24-mc-96, Doc. 30, Tr. at 5 (Tarver stated: "Despite being listed as counsel of record, I was effectively prevented from practicing. This created a deeply troubling ethical dilemma for me.").)

By ordering Tarver to stop participating in *Boudreaux* while not allowing her to withdraw and, at the same time, not ensuring that other counsel replaced her, Galindo personally took direct professional control of and responsibility for Boudreaux's case. Thus, while not enrolled as her attorney of record, the Court finds by clear and convincing evidence that Galindo violated Rule 1.1 of the Louisiana Rules of Professional Conduct by not "provid[ing] competent representation" to Boudreaux; Rule 1.3, by not "act[ing] with reasonable diligence and promptness" in his *de facto* representation of Boudreaux; Rule 1.4(a)(3), by not "keep[ing] [Boudreaux] reasonably informed about the status" of her case; Rule 1.4(b), by not "giv[ing] the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they [were] to be pursued"; and Rule 1.16(a)(1), by failing to have Tarver withdraw and be replaced when continued "representation [would] result in a violation of the rules of professional conduct."

In addition, the Court finds by clear and convincing evidence that Galindo also violated Louisiana Rule of Professional Conduct 5.1. Indeed, Galindo and GLF admit their violation of

21

parts of Rule 5.1. "Cristobal M. Galindo and the Galindo Law Firm ('GLF') admits that it failed to supervise Dorothy Tarver and thereby violated Louisiana Rule of Professional Conduct 5.1." (24-mc-96, Doc. 41 at 1; *see also id.* at 4 ("Mr. Galindo and GLF come before this Court with profound regret and sincere remorse for the supervisory failures that led to these proceedings.").) Galindo "acknowledges that he failed to ensure firm-wide compliance measures under Rule 5.1(a)." (*Id.* at 5.) He admits that GLF "violated Louisiana Rule of Professional Conduct 5.1 and failed in its fundamental duty to properly supervise lawyer conduct." (*Id.* at 4–5).

Furthermore, Galindo admits that he "failed to make reasonable efforts to ensure Ms. Tarver's compliance with the Rules of Professional Conduct under Rule 5.1(b)." (*Id.* at 6.) In this regard, Galindo admitted that, as Managing Partner, it was his responsibility to ensure that his firm's attorneys had sufficient help to perform their duties in the Middle District. (24-mc-96, Doc. 30, Tr. at 34.) Galindo's counsel conceded that the clients represented by Tarver were the firm's clients. (*Id.* at 17.) Galindo agreed that, as Managing Partner, he was "responsible for finding someone to help [his firm's lawyers] handle . . . cases in federal court[.]" (*Id.* at 34 ("A hundred percent, Your Honor."); *see also* 24-mc-96, Doc. 41 at 5.)

But despite these admitted responsibilities, Galindo adopted a business model that was doomed to fail and imperil the clients it was intended to serve—namely, assigning too few attorneys to diligently, effectively, and ethically handle the large number of cases assigned to them. Galindo conceded as much. After admitting that only one GLF lawyer was handling hundreds of clients in the Middle District, he was asked:

Q.    What does that tell you about the ability of that lawyer to do the right kind of job?

A.    Difficult.

Q.    Don't you think that has to do with your business model?

22

A.      Yes, sir.

(24-mc-96, Doc. 30, Tr. at 44.)

Therefore, Tarver's contention that GLF's "[u]nderstaffing led directly to misunderstandings, errors, stress, employee dissatisfaction, and delays in processing the case," (24-mc-96, Doc. 27 at 3), is credible and supported not only by Tarver's testimony, what happened to Tarver in this case and the other cases in which she was cautioned or sanctioned in this district, but also by a review of reported cases in this and other districts in this state.

Similar to what happened in this case, in *Hotard v. Aegis Sec. Ins. Co.*, No. 23-6003, 2025 WL 50034 (E.D. La. Jan. 8, 2025) (Fallon, J.), the parties reached a settlement agreement, but Plaintiff failed to send Defendant a signed release after receiving the settlement check. 2025 WL 50034, at *1. Defendant then filed a motion requesting the enforcement of the settlement. *Id.* Several Galindo attorneys, including Tarver, were ordered "to appear in person and show cause as to why" the motion should not be granted, but none appeared. *Id.* The Eastern District granted the motion to enforce settlement and awarded Defendant attorney's fees related to the motion. *Id.* at *3. The court further said, "[T]his outcome is warranted pursuant to [the court's] inherent authority to sanction vexatious and egregious conduct, such as that exhibited by Plaintiff's counsel in failing to comply with this Court's show cause order and generally being non-responsive." *Id.*

In *Franklin v. Occidental Fire & Casualty Co. of N.C.*, No. 23-4483, 2024 U.S. Dist. LEXIS 180156 (E.D. La. Oct. 2, 2024) (Zainey, J.), Tarver, as sole counsel for Plaintiff, failed to respond to a motion to dismiss by August 27, 2024, shortly after her leave of absence from GLF began. 2024 U.S. Dist. LEXIS 180156, at *1. The Eastern District noted that Tarver missed a status conference in May 2024 and failed to file initial disclosures by the June 11, 2024, deadline. *Id.* The motion to dismiss was reset for consideration on October 2, 2024, but the motion remained

23

unopposed. *Id.* The Eastern District did not grant the motion to dismiss because it lacked merit; it instead dismissed the claim under Federal Rule of Civil Procedure 41(b) for failure to prosecute. *Id.*

In *Rhodies v. Allstate Insurance Co.*, No. 23-4586, 2024 WL 3427208 (E.D. La. July 16, 2024) (Papillion, J.), Defendant "filed a motion to dismiss, arguing [Defendant] did not insure [Plaintiff's] property at the time of the storm and urg[ed] the Court to dismiss [Plaintiff's] claims for lack of standing and failure to state a claim." 2024 WL 3427208, at *1. Plaintiff, represented by GLF attorneys including Tarver, failed to respond to the motion. *Id.* The court held a status conference by telephone to discuss the motion, where it converted the motion to dismiss into a motion for summary judgment, giving Plaintiff twenty-one more days to respond. *Id.* Plaintiff again failed to respond. *Id.* The Eastern District found that Defendant met its burden and granted summary judgment in favor of Plaintiff. *Id.* at *2.

In *Stewart v. Liberty Mutual Insurance Co.*, No. 23-859, 2024 WL 3446319 (M.D. La. July 16, 2024), Tarver failed to respond to discovery requests and failed to respond to a motion to compel discovery responses. 2024 WL 3446319, at *1. Magistrate Judge Richard Bourgeois granted in part and denied in part the motion to compel, finding that Plaintiff—via Tarver—had "failed to timely object to Defendant's written discovery requests" and had therefore "waived its objections to the written discovery requests, except for those pertaining to privileges or immunities." *Id.* at *3.

In *Turner v. HomeFirst Agency Inc.*, No. 23-1203 2024 WL 3152251 (M.D. La. June 24, 2024) (Jackson, J.), Tarver failed to respond to a motion to dismiss, which was subsequently granted. 2024 WL 3152251, at *1–2.

In *Tolbert v. Allied Trust Insurance Co.*, No. 22-4948, 2024 WL 3879506 (W.D. La. Aug. 20, 2024) (Cain, J.), Plaintiff's counsel, including Tarver, failed to comply with the court's order to engage in settlement discussions, ignored Defendant's attempts to mediate the matter, and did not attend a scheduled mediation with a judge in the Western District. 2024 WL 3879506, at *1. The Western District dismissed Plaintiff's claims under Federal Rule of Civil Procedure 41(b) for failure to prosecute. *Id.*[14]

Galindo allowed this business model to continue despite these continued reported failings and despite the fact that "[o]n numerous occasions [Tarver] begged Chris Galindo to hire attorneys and/or staff [but] he refused." (24-mc-96, Doc. 27 at 3.) What Galindo claims to have done to correct this situation, *i.e.*, make his arrangement with Tarver (detailed above), did nothing to correct this problem and indeed aggravated it many-fold.

While Galindo doesn't admit to his violation of Louisiana Rule of Professional Conduct 5.1(c)(1), the Court finds by clear and convincing evidence that he violated it. Under that provision, one lawyer "shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:

> (1) The lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved[.]"

---

[14] See also the following cases in which other lawyers in GLF committed similar violations: *Steven-Reynolds v. Wilshire Ins. Co.*, No. 22-1238, 2023 WL 5487371 (W.D. La. Aug. 23, 2023) (GLF attorney failed to file an opposition to a motion for summary judgment, which was subsequently granted); *Randle v. Am. Sec. Ins. Co.*, No. 23-210, 2024 WL 1621912 (W.D. La. Apr. 15, 2024) (GLF attorneys failed to file an opposition to a motion for summary judgment, which was subsequently granted); *Collins v. Geovera Spec. Ins. Co.*, No. 23-1457, 2024 WL 1774002 (M.D. La. Apr. 24, 2024) (GLF attorneys failed to oppose a motion to compel initial disclosures and discovery responses, and did not provide Rule 26(a)(1) initial disclosures by the Court's deadline); *Freemon v. Allstate Indem. Co.*, No. 23-4809, 2024 WL 183489 (E.D. La. Jan. 17, 2024) (GLF attorneys failed to file an opposition to a motion for summary judgment, which was subsequently granted); *Brooks v. United Servs. Auto. Ass'n*, No. 23-3181, 2023 WL 7411189 (E.D. La. Nov. 9, 2023) (GLF attorneys failed to respond to a motion to dismiss, which was subsequently granted); *Perez v. Allstate Vehicle and Prop. Ins. Co.*, No. 21-850, 2022 WL 1118955 (W.D. Tex. Feb. 18, 2022) (Cristobal Galindo represented Plaintiff. He did not respond to a motion to dismiss, nor did he amend the complaint, which the Western District of Texas allows as a matter of course. The court provided him 14 more days to file an amended complaint, which he did. Defendant filed a motion to dismiss the amended complaint, which Plaintiff failed to timely oppose. The motion to dismiss was subsequently granted.)

Louisiana Rule of Professional Conduct 5.1(c)(1)

Here, as detailed above, Galindo ordered the specific conduct at issue here: Tarver's nominal representation of Boudreaux while not allowing her to withdraw and be replaced by other counsel. In addition, by allowing this to situation to persist for months, he ratified Tarver's conduct about which he was well aware.

In committing the above violations of the Louisiana Rules of Professional Conduct, Galindo violated Middle District Local Rule 83(b)(6), which adopts the Louisiana Rules of Professional Conduct as part of this district's Local Rules.

For her part, while Tarver argues that she "couldn't do anything," (23:828, Doc. 28, Tr. at 14), there were clearly steps Tarver could and should have taken to protect her clients and herself while fulfilling her ethical and professional obligations. First and foremost, she should not have entered an agreement wherein she remained the lawyer of record but could not fully represent her clients. But once having entered into the agreement, she could and should have withdrawn from the agreement which she voluntarily entered into and which required her to stop representing her clients in any meaningful way, not work on her clients' cases, and give up access to her clients, their files, the GLF database system, and opposing counsel.

But Tarver chose not to withdraw because of the quid pro quo she received: GLF's agreement to pay her salary and the lawyer representing her and GLF in the *Connelley* disciplinary proceeding. When asked directly by the Court, "Why would you do that? Why would you expose your own license to do that?" Tarver responded, "I needed an attorney. And I wouldn't have -- they -- the firm would not have f[ur]nished counsel in *Connelley* if I was no longer on the payroll . . . ." (24-mc-96, Doc. 30, Tr. at 59.)

26

Had she withdrawn from the agreement, or not entered into it in the first place, and GLF still refused to at least provide sufficient case information for her to notify her clients and the courts that she was withdrawing, she could have sought the assistance of the Clerk of this Court. Further, had Galindo and GLF not facilitated her withdrawal, she could have complained to disciplinary authorities in Louisiana and Texas as well as the courts in which these cases were pending.

As the enrolled attorney of record for Boudreaux, Tarver had direct responsibility for the handling of her case. Everyone agrees that when Tarver entered into this arrangement with Galindo and GLF, she left Boudreaux and her other clients effectively unrepresented. The Court finds by clear and convincing evidence that Tarver violated Rule 1.1 of the Louisiana Rules of Professional Conduct by not "provid[ing] competent representation" to her client Britney Boudreaux; Rule 1.3, by not "act[ing] with reasonable diligence and promptness" in her representation of Boudreaux; Rule 1.4(a)(3) by not "keep[ing] the client reasonably informed about the status" of her case; Rule 1.4(b), by not "giv[ing] the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they [were] to be pursued"; and Rule 1.16(a)(1) by failing to withdraw when continued "representation [would] result in a violation of the rules of professional conduct." Tarver also failed in Boudreaux's case to follow the briefing schedule ordered by this Court by not filing a brief responding the Motion to Enforce Settlement Agreement. As detailed above, this conduct resulted in a delay of approximately eight months in completing the settlement of Boudreaux's case, and only after a Motion to Enforce Settlement was filed, (23:828, Doc. 19), multiple notices were generated by the Court, (*id*. Docs. 20, 23, 19), and a hearing was held, (*id*. Doc. 30). It also led to this disciplinary proceeding.

In committing these violations of the Louisiana Rules of Professional Conduct and the Court's briefing schedule, Tarver violated Middle District Local Rule 83(b)(6), which adopts the Louisiana Rules of Professional Conduct as part of this district's Local Rules.

### B. Court's Jurisdiction over Cristbal M. Galindo

While conceding this Court's authority to sanction his firm,[15] Galindo argues for the first time in post-hearing briefing that this Court has no jurisdiction over him personally because "he is not admitted to practice before the Middle District of Louisiana . . . [and] did not enter an appearance, file any pleadings, or address the Court as counsel for any party." (24-mc-96, Doc. 41 at 1–2 n.1.) He supports his argument by stating that "[f]ederal courts have disciplinary and regulatory authority over attorneys who are admitted to practice before them or who seek to appear pro hac vice." (*Id.* at 2, n.1.) In further support of his position he cites *Frazier v Heebe*, 482 U.S. 641, 645 (1987), for the proposition that "a court's power to regulate lawyers is limited to those admitted or authorized to practice before it." (*Id.*) Galindo also cites *In re Snyder*, 472 U.S. at 645 n.6. (*Id.*)

The Court concludes that it does have jurisdiction to sanction Galindo personally. First, the Court finds that Galindo waived his jurisdictional objection by failing to assert it timely. Galindo failed to raise it in both his substantive written response to the Court's initial show cause order, (24-mc-96, Doc. 22), and at the hearing in which his lawyer made argument, (24-mc-96, Doc. 30, Tr. at 10–22), and Galindo gave sworn testimony, (*id.* at 22–44).

"[A] party may waive any jurisdictional objections if its conduct does 'not reflect a continuing objection to the power of the court to act over the defendant's person.'" *PaineWebber*

---

[15] Galindo and GLF write in their post-hearing brief that "GLF acknowledges its violations of Rule 5.1, has implemented corrective reforms, and respectfully requests sanctions appropriate to its current scope of practice. GLF stands ready to comply with any conditions the Court imposes . . . ." (24-mc-96, Doc. 41 at 10.)

*Inc. v. Chase Manhattan Priv. Bank (Switzerland)*, 260 F.3d 453, 460 (5th Cir. 2001); *see also*

*Special Quality Alloys, Inc. v. Coastal Mach. & Supply, Inc.*, No. 22-4258, 2023 WL 7412945, at

*2 (S.D. Tex. Nov. 9, 2023) ("To waive or forfeit a personal jurisdiction defense, a defendant must

give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the

court to go to some effort that would be wasted if personal jurisdiction is later found lacking."

(quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623

F.3d 440, 443 (7th Cir. 2010))). There is no "bright-line rule," but the Fifth Circuit has provided

some guidance:

> Conduct short of waiting until appeal to litigate the defense has resulted in waiver. For example, a defendant waived its jurisdictional defense by suing the plaintiff in the objectionable forum in a second suit involving the same facts. *Gen. Contracting & Trading Co., L.L.C. v. Interpole, Inc.,* 940 F.2d 20, 23 (1st Cir. 1991). In another case, the defendants filed their motion to dismiss for lack of personal jurisdiction only after their motion for summary judgment on their counterclaim had been denied. *Bel-Ray Co., Inc. v. Chemrite Ltd.,* 181 F.3d 435, 443–44 (3d Cir. 1999). The court in *Bel-Ray* determined that the defendants had subjected themselves to jurisdiction by moving for summary judgment on their own claims for relief. *Id.* In the Ninth Circuit, a court may find waiver of personal jurisdiction if the defendant has complied with Rule 12 only when there are "other factors militating in favor of a finding of waiver." *Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1319 (9th Cir. 1998). The *Peterson* court gave an example of such an other factor:
>
>> if a defendant were to engage in "sandbagging" by raising the issue of personal jurisdiction on a motion to dismiss, deliberately refraining from pursuing it any further when his motion is denied in the hopes of receiving a favorable disposition on the merits, and then raising the issue again on appeal only if he were unhappy with the district court's ultimate decision, then we would not hesitate to find that the defendant had waived any right to pursue the defense.

*Id.* at 1318.

*Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 380 (5th Cir. 2004)

(finding no waiver "particularly considering that [defendant] continued to note its objection to

jurisdiction at the preliminary conference and in its discovery responses").

Several cases have recognized waiver by conduct in situations comparable to Galindo's. *See Gray v. MYRM Holdings L.L.C.*, No. A-11-CA-180-LY, 2012 WL 13028851, at \*4 (W.D. Tex. Jan. 10, 2012) (finding that one defendant "waived any contention that the court lacks personal jurisdiction over him" when he (1) responded to a second motion for sanctions and contempt, (2) moved for an extension of time to respond to the complaint, (3) moved to set aside the clerk's entry of default and responded to plaintiff's motion for entry of default judgment, and (4) received from the Court the requested relief when the court withdrew the clerk's entry of default and denied the requested default judgment); *see also id.* at \*5 (finding that another defendant waived objection to jurisdiction when he moved to set aside entry of default but his motion "lacked any language indicating that [he] challenged th[e] court's personal jurisdiction over him or that he desired to reserve his right to raise the issue of the court's lack of personal jurisdiction for a later time"); *Georgetown Jet Ctr., Inc. v. Biscayne Helicopters, Inc.*, No. A-06-CA-004 RP, 2007 WL 9701308, at \*2 (W.D. Tex. Nov. 20, 2007) (finding defendant's "delay in . . . filing a jurisdictional objection, along with his participation in pre-trial matters," such as moving to compel arbitration, requesting a denial of plaintiff's motion for reconsideration, and entering into an agreed motion to enter scheduling order "constitute[d] conduct that does 'not reflect a continuing objection to the power of the court to act over the defendant's person'" (quoting *PaineWebber*, 260 F.3d at 460) (citing, *inter alia*, *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999) ("defendant forfeited defense of lack of personal jurisdiction under long-arm statute by participating in extensive pretrial proceedings and foregoing numerous opportunities to move to dismiss during four year interval that followed its inclusion of defense in its answer"); *Trs. of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731 (7th Cir. 1991) ("defendants waived their Rule 12(b)(5) defense by participating in proceedings, even though they had not yet filed a Rule 12(b) motion or answer"))).

And this case is unlike those where a waiver was denied. *See PaineWebber*, 260 F.3d at 460–61 (finding no waiver by conduct when defendant "timely and properly asserted its jurisdictional objection," "asserted no counterclaims and engaged in no third-party practice," and premised its motion to stay on the lack of jurisdiction); *Brokerwood Int'l*, 104 F. App'x at 380 (reversing district court's finding of jurisdictional waiver when defendant's "actions . . . d[id] not rise to the level of 'sandbagging,' or participation that would cause waiver" because (1) defendant "continued to note its objection to jurisdiction at the preliminary conference and in its discovery responses"; (2) defendant "did not file any counterclaims, much less seek adjudication on the merits of any claims"; and (3) "the case was dormant during most of [the] time . . . between [defendant's] answer and its motion to dismiss"); *see also Special Quality*, 2023 WL 7412945, at *3 (finding no waiver, in part because "[d]efendants' motion for a stay d[id] not come close to what is required for waiver or forfeiture of a personal jurisdiction defense" and in part because "[m]any courts have recognized that defendants do not waive their right to contest personal jurisdiction by participating in the Scheduling Conference and filing of the 26(f) Report, in compliance with the Federal Rules, Local Rules, and Court Orders" (cleaned up)); *Anderson v. GlobalSantaFe Offshore Servs., Inc.*, 924 F. Supp. 2d 738, 749 (E.D. La. 2013) (rejecting argument that defendant waived jurisdictional defense "by participating in discovery and a settlement conference" because defendant had "done nothing to indicate a waiver," but rather had "pleaded insufficiency of process and lack of personal jurisdiction in its answer and thereby preserved those defenses"; had "premised its motion to continue the trial date on the existence of the personal jurisdiction issue"; and had "not asserted counterclaims, engaged in third-party practice, or made any discovery requests of" plaintiff).

Second, even if Galindo had not waived his jurisdictional objection, the plain language of this Court's Local Rules gives this Court the power to sanction those who violate its rules without regard to whether they have been formally admitted.

Rule 83(b)(12)(A)

A. After notice and an opportunity to show cause to the contrary, any Judge, including active Judges, Senior Judges, Bankruptcy Judges, and Magistrate Judges, may sanction *any* attorney for failure to comply with these rules, the Louisiana Rules of Professional Conduct, or any other rule of Court.

M.D. La. Civ. R. 83(b)(12)(A) (emphasis added).

To hold otherwise would lead to the absurd result that an attorney actively and intentionally engaging in unethical or improper conduct in connection with and affecting a case in this Court could escape responsibility by simply not becoming formally admitted. Nor does it matter that Galindo was not enrolled on behalf of Boudreaux. As recounted above, Galindo's professional decisions and directives drove and adversely impacted Tarver's handling of the *Boudreaux* case (or, more accurately, her *not* handling the case).

The Court notes that neither case cited by Galindo supports his argument that a federal court is powerless to act against an attorney not formally admitted to practice before it. Indeed, neither case even dealt with this issue. *Frazier v. Heebe* merely held that a federal district court is "not empowered to adopt its local Rules to require members of the Louisiana Bar who apply for admission to its bar to live in, or maintain an office in, Louisiana where that court sits." 482 U.S. at 645. Galindo does not even point the Court to dicta in *Frazier* that addresses, let alone supports, his position or is even relevant to the issue in this case. Likewise, *In re Snyder* did not deal with the power of a federal court to sanction one not admitted to practice before it. Rather, it dealt with the appropriateness of sanctions issued to an attorney who *was* admitted to practice before it and was "appointed by the Federal District Court for the District of North Dakota to represent a

32

defendant under the Criminal Justice Act." *In re Snyder*, 472 U.S. at 634. The statements from

Footnote 6 of *In re Snyder* quoted by Galindo again do not address the issue here. [16]

Third, even if this Court had no power to sanction Galindo under its local rules, it could do

so under its inherent authority since a federal court's right to sanction an attorney for bad-faith

misconduct is not dependent on a violation of its local rules. "Since the early days of English

common law, it has been widely recognized that courts possess the inherent power to regulate the

conduct of attorneys who practice before them and to discipline or disbar such of those attorneys

as are guilty of unprofessional conduct." *Howell v. State Bar of Tex.*, 843 F.2d 205, 206–07 (5th

Cir. 1988) (citations omitted).

> This Court has consistently distinguished between a court's inherent power and its
> local rules. *See, e.g.*, *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290,
> 292–93 (5th Cir. 1997); *Ehm v. Amtrak Bd. of Dirs.,* 780 F.2d 516, 517 (5th Cir.
> 1986) (per curiam); *Martin-Trigona v. Morris*, 627 F.2d 680, 682 n.1 (5th Cir. 1980)
> (per curiam). Federal courts enjoy the inherent power to "manage their own affairs
> so as to achieve the orderly and expeditious disposition of cases." *Chambers v.
> NASCO, Inc.*, 501 U.S. 32, 43 [] (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S.
> 626, 630–31 [] (1962)). This power includes the ability to discipline attorneys,
> punish for contempt, control admission to its bar, and vacate judgments. *Id.* at 43–
> 44 []. Most relevant to the instant suit is the ability of federal courts to "suspend or
> dismiss an attorney as an exercise of [their] inherent powers." *Resolution Tr. Corp.
> v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993).

*In re Goode*, 821 F.3d 553, 558–59 (5th Cir. 2016) (emphasis added); *see also In re Chesson*, No.

5:18-MC-00032, 2019 WL 5295696, at *5 (W.D. La. Aug. 1, 2019), *report and recommendation*

*adopted*, No. 18-MC-00032, 2019 WL 5295698 (W.D. La. Oct. 18, 2019).

Thus, the fact that this Court has the power to sanction Galindo by way of its Local Rules

does not prevent the use of its inherent power to do so. *Chambers*, 501 U.S. at 50 ("[N]either is a

federal court forbidden to sanction bad-faith conduct by means of the inherent power simply

---

[16] The footnote makes the unremarkable statement that "Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law." *In re Snyder*, 472 U.S. at 645 n.6 (quoting *Hertz v. United States*, 18 F.2d 52, 54–55 (8th Cir. 1927)); (*see* 24-mc-96, Doc. 41 at 2 n.1).

because that conduct could also be sanctioned under the statute or the Rules.") However, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Id.* at 50.

It is true that in exercising its inherent authority, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44 (citation omitted). Unlike a violation of a court's local rules, "[i]t is well settled that in order for a federal court to sanction an attorney under its inherent powers, it must make a specific finding that the attorney acted in bad faith." *In re Goode*, 821 F.3d at 559 (citing *Dawson v. United States*, 68 F.3d 886, 895 (5th Cir.1995)).

But here, even if this Court did not have jurisdiction to sanction Galindo under its Local Rules, it could and would do so by way of its inherent authority since the Court easily finds that Galindo acted in bad faith. In order to ensure Tarver's cooperation in the *Connelley* disciplinary matter, Galindo kept Tarver employed on a "leave of absence" and continued to pay both her salary and the attorney's fees for her defense in *Connelley*. In exchange, Galindo required Tarver to remain as attorney of record in *Boudreaux* and other cases in the Middle District where she was acting as sole counsel but, at the same time, denied her the tools necessary to meaningfully represent Boudreaux and other clients. By keeping Tarver as counsel of record but imposing restrictions that made it impossible for her to do her job, Galindo directly involved himself in the handling of a case before this Court. Indeed, Galindo's actions in keeping Tarver as counsel of record while preventing her from acting as counsel had the effect of depriving Boudreaux of any meaningful counsel or the ability to hire any counsel other than GLF, whom she still thought to be acting as her counsel. This direct involvement caused the harm in this case. This bad-faith

34

misconduct additionally subjects Galindo to the inherent authority of this Court notwithstanding his failure to formally be admitted or admitted pro hac vice to practice in this Court.[17]

Finally, the Court notes that the fact that Galindo is not licensed to practice in Louisiana does not exempt him from the reach of the Louisiana Rules of Professional Conduct. "A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction." Louisiana Rule of Professional Conduct 8.5. Again, despite his formal lack of admission to this Court, Galindo's conduct described above constituted the provision of legal services in this jurisdiction.

### C. Appropriate Sanctions

#### 1. Standard

Having determined that the record supports a finding that Tarver, GLF and Galindo violated Louisiana's Rules of Professional Conduct and this Court's Local Rules, the question becomes what sanctions are appropriate. The Order to Show Cause put respondents on notice as to a wide range of possible sanctions including, but not limited to, "reprimand; ethics and/or professionalism training; suspension; disbarment; and/or the payment of a civil fine." (24-mc-96, Doc. 14 at 6.) This Court's Local Rules provide for "such disciplinary action as the Judge may see fit" when willful noncompliance with a Local Rule has been established. M.D. La. Civ. R. 83(b)(12)(D).

In addition, the Fifth Circuit has provided additional factors to consider: "In imposing a sanction after a finding of misconduct, a court should consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence

---

[17] See *Limon v. City of Laredo*, No. 24-113, 2025 WL 408458, at *3 (S.D. Tex. Jan. 14, 2025), *report and recommendation adopted,* No. 24-113, 2025 WL 407862 (S.D. Tex. Feb. 5, 2025), where the Court found that an attorney not admitted to practice before the Southern District of Texas was nonetheless subject to the court's inherent power to sanction but held that sanctions should not be imposed because his transgression was not in bad faith.

of aggravating or mitigating factors." *In re Sealed Appellant*, 194 F.3d 666, 673 (5th Cir. 1999). These factors will be considered separately for Tarver, Galindo and GLF. *See In re Grodner*, No. 3:14-MC-00050-BAJ, 2014 WL 4365080, at *8 (M.D. La. Sept. 2, 2014), *aff'd*, 587 F. App'x 166 (5th Cir. 2014); *In re Marshall*, 2016 WL 81484, at *10; *In re Chesson*, 2019 WL 5295696, at *4.

### 2. *Appropriate Sanctions – Tarver*

#### a. Duties Violated

For the reasons detailed above, the Court finds by clear and convincing evidence that Tarver violated Louisiana Rules of Professional Conduct 1.3 (failing to provide diligent representation), 1.4(a)(3) (failing to communicate regarding the status of the case), 1.4(b) (failing to communicate sufficient information for client to participate intelligently), and 1.16(a)(1) (failing to timely withdraw representation). She also violated Middle District Local Rule 83(b)(12), which requires attorneys to abide by the Louisiana Rules of Professional Conduct.

#### b. Attorney's Mental State

On the one hand, the Court accepts Tarver's contention and testimony that she was given too many cases to handle without the support needed to diligently and competently handle them. The Court also accepts Tarver's representations that

> [i]nadequate staffing of the New Orleans office significantly impeded timely and consistent communications with the firm's clients, other attorneys, mediators, and the courts. Understaffing led directly to misunderstandings, errors, stress, employee dissatisfaction, and delays in processing the case.

(24-mc-96, Doc. 27 at 3.)

The Court accepts Tarver's representation that "[o]n numerous occasions [Tarver] begged Chris Galindo to hire attorneys and/or staff [but] he refused." (*Id.*) The Court accepts Tarver's statement that she was "deeply troubl[ed]" by the "ethical dilemma" created when she entered into

36

the agreement with Galindo, which required her to take a leave of absence and, despite remaining counsel of record, abandon her clients. (24-mc-96, Doc. 30, Tr. at 5.)

On the other hand, the Court rejects Tarver's contention that she was helpless to do anything about this situation. She could have just quit. She could have chosen not to enter into the agreement with Galindo. Once having entered into the agreement, she could have changed her mind and withdrawn from it. In any event, she should have withdrawn as attorney of record in any case where she was not fully representing the client and advised the client that she was doing so. To the extent that her lack of access to client files, the database, and client contact information made that difficult, she could have sought the assistance of the disciplinary authorities in Louisiana and Texas and the courts in which the cases were pending.

In Tarver's brief in *Connelley*, filed on September 6, 2024, during the midst of her self-proclaimed "dilemma," she represented that there was "no excuse for her conduct, . . . she accepts responsibility and is beyond remorseful" and that "she has learned a lesson from this incident and such lapses will never occur again." (24-mc-96, Doc. 10 at 5.) Yet, acknowledging this at least as early as September 6, 2024, she failed to take the necessary steps to withdraw in *Boudreaux* and/or see that Boudreaux was properly represented.

On balance, while the Court does not believe that Tarver's conduct was driven by greed[18] or an intention to damage her clients, the Court finds that her conduct was knowing and exceedingly reckless.

c.  Actual or Potential Injury Caused

The actual injury caused by Tarver's conduct in the *Boudreaux* case was relatively minor but not insignificant. Because Tarver effectively abandoned Boudreaux and was incommunicado

---

[18] The Court does note, however, that Ms. Tarver conceded that part of her motivation for entering the agreement was so that GLF would pay for her attorney in *Connelley*. (24-mc-96, Doc. 30, Tr. at 59.)

with the Court and her client, the defendant tried in vain for eight months to consummate the settlement it had reached with Tarver on August 1, 2024. (23:828, Doc. 19-1 at 2.) This required the defendant first to file a Motion to Enforce Settlement, (23:828, Doc. 19), and when that drew no opposition or other reaction, a Motion for Status Conference, (23:828, Doc. 22). Even after both motions were filed, the settlement was not completed, and a Motion to Dismiss was not filed until April 2, 2025, eight months after the agreement was reached and two months after the status conference. (*Id.* Docs. 40 and 41.) As a result, the Court was required to needlessly waste its time reviewing pleadings and engaging with the lawyers at the status conference as to what had happened and why the case had not been concluded.

The potential injury is demonstrated graphically by what in fact happened in other cases handled by Tarver where, because of missed deadlines, her clients' cases were delayed and, in some cases, dismissed. *See* Sections II. & VIII.A., *supra* (collecting cases).

### d. Aggravating or Mitigating Factors

Again, the Court understands that Tarver was placed into a very difficult position by what she accurately described as Galindo's "deeply flawed management structure." (24-mc-96, Doc. 30, Tr. at 4.) This is a mitigating factor. But Tarver was not required to continue to practice under those circumstances, and she placed her client's interests and her own reputation in jeopardy by doing so. The problems Tarver and her clients were having in other cases in this district and other districts should have been a clear warning sign to take action. Furthermore, she was not required to enter into the agreement to give up her actual representation while continuing to appear as attorney of record. These were knowing choices she made which are aggravating factors.

Another aggravating factor is that Tarver's conduct in this case occurred *after* (1) Tarver had already been issued a strike by Magistrate Judge Wilder-Doomes in *Hoyt* on June 14, 2024,

38

(23:844, Doc. 29 at 1, n.1); (2) Magistrate Judge Bourgeois found on July 14, 2024, that "Ms. Tarver's performance is below the standard required to practice law," (23:860, Doc. 25 at 2); and (3) Judge Jackson had issued the Show Cause Order in *Connelley* on July 16, 2024, (24-mc-96, Doc. 1; *see also* 23:952, Doc. 23). In addition, her conduct continued after she pledged in *Connelley* to correct the situation, and she threw herself on the mercy of the Court (and got mercy from Judge Jackson). (24-mc-96, Doc. 10 at 5.)[19]

### e. Sanctions for Tarver

Given the totality of the circumstances, Tarver is suspended for a period of eleven (11) months from practicing in this Court, effective as of the date of this Order. In addition, Tarver will attend an additional eight (8) hours of Professionalism CLE over a twenty-four (24) month period, in addition to the minimum required by her state of licensure. Tarver will provide a statement attesting to her completion of the Professionalism CLE required by this Order within fourteen (14) days of the end of the twenty-four (24) month period.

### 3. Appropriate Sanctions – Galindo and GLF

### a. Duties Violated

For the reasons detailed above, the Court finds by clear and convincing evidence that by creating and entering into the agreement with Tarver which led to Tarver's clients being effectively unrepresented, Galindo ordered, ratified, and engaged in unethical conduct in violation of Louisiana Rule of Professional Conduct 5.1(c)(1). Galindo violated Rule 5.1(c)(2) since he had direct supervisory authority over Tarver, knew of her unethical conduct at a time when its

---

[19] As mentioned above, on September 6, 2024, she represented through counsel in the *Connelley* matter that she "apologize[d], without limitation or attempted justification, for her failure to comply with the Court's orders and rules[,] . . . accept[ed] full responsibility, and . . . [was] beyond remorseful for her failings." (24-mc-96, Doc. 10 at 5.) This was precisely the time period Tarver was failing to act for Boudreaux, leaving her client functionally unrepresented.

consequences could have been avoided or mitigated, and failed to take reasonable remedial action. He and GLF also violated Rule 5.1(a) by failing to ensure that GLF had in effect measures giving reasonable assurance that Tarver and GLF's other lawyers were conforming to the Louisiana Rules of Professional Conduct.[20] Galindo and GLF violated Rule 5.1(b) by failing to take reasonable steps to ensure that Tarver conformed to the Louisiana Rules of Professional Conduct.[21] A major contributing factor to Galindo and GLF's violation of Rule 5.1(b) was the business model he created, having too few lawyers for the number of cases being handled, presumably to maximize profit, which was a major contributing factor to Tarver's misconduct.

The Court finds that by removing Tarver from effective and meaningful representation of Boudreaux, not requiring (or allowing) Tarver to withdraw, not requiring other counsel to enroll and not advising Boudreaux of what was happening, Galindo also violated Louisiana Rules of Professional Conduct 1.3 (failing to provide diligent representation), 1.4(a)(3) (failing to communicate regarding the status of the case), 1.4(b) (failing to communicate sufficient information for client to participate intelligently), and 1.16(a)(1) (failing to timely withdraw representation), as well as Middle District Local Rule 83(b)(12) (requiring attorney practicing in this District (whether or not formally admitted) to follow the Louisiana Rules of Professional Conduct).

b. <u>Attorney's Mental State</u>

Galindo was aware of Tarver's beleaguered status in representing Boudreaux and others, caused by the business model he created. He was directly aware of the circumstances leading to

---

[20] "Mr. Galindo acknowledges he failed to ensure adequate firm-wide compliance with measures under Rule 5.1(a)." (24-mc-96, Doc. 41 at 5.)
[21] As stated above, Galindo and GLF admit that GLF failed to properly supervise Tarver (24-mc-96, Doc. 41 at 1, 4–5.) "Mr. Galindo admits that he failed to make reasonable efforts to ensure Ms. Tarver's compliance with the Rules of Professional Conduct under Rule 5.1(b)." (*Id.* at 6.)

the Show Cause Order in *Connelly* and was aware of Tarver "begg[ing] [him] to hire attorneys and/or staff." (24-mc-96, Doc. 27 at 3.) Galindo was obviously aware of his directions to Tarver not to work on her clients' cases, and not to communicate with clients or opposing counsel. His violations were therefore knowing, willful, and in bad faith.

      c.  <u>Actual or Potential Injury Caused</u>

As stated earlier, the defendant in *Boudreaux* was required to spend months waiting to consummate a settlement which had already been agreed to. (23:828, Doc. 19-1 at 2.) In addition, the defendant had to unnecessarily pay its lawyer to take extra steps to bring the matter to conclusion. In addition, the Court had to waste its time reviewing pleadings, setting a status conference and engaging with the lawyers as to what had happened and why the case had not been concluded. But as mentioned above, the actual and potential injury went beyond the *Boudreaux* case. Galindo's admitted failings and failed modus operandi created problems in many other cases within and outside this district. *See* Sections II. & VIII.A., *supra* (collecting cases).

      d.  <u>Aggravating or Mitigating Factors</u>

Galindo created the business model at GLF, which led to the harm suffered not only by Boudreaux but which caused harm to other GLF clients as well as harm and inconvenience to the federal district courts in this and other districts in Louisiana.[22] In addition, this model was allowed to continue despite the previous sanctions and warnings issued by this and other courts because of Galindo's admitted lack of supervision of Tarver. These are aggravating factors. So is Galindo's initial lack of candor and contrition or even the acknowledgement of a problem in his original four-paragraph written response to the Show Cause Order. (24-mc-96, Doc. 22.)

---

[22] See above for a summary of the other cases in this and other districts in which Tarver and/or other GLF lawyers were warned or sanctioned.

Another aggravating factor is that Galindo personally created and orchestrated the plainly unethical agreement that, in part, led to this Show Cause Order. Still another is Galindo's initial lack of candor as to the purpose and scope of the directive he gave Tarver (i.e., not to communicate with the clients or opposing counsel and not to work on the clients' cases). In his original brief, Galindo argued that Tarver's "diminished role was to allow Ms. Tarver to finalize cases that she'd been handling since she had relationships with those respective clients, but no new cases were being assigned to her." (*Id.* at 2.) However, at the hearing, Galindo admitted that Tarver was instructed not to communicate with opposing counsel, (24-mc-96, Doc. 30, Tr. at 31); that Tarver did not have access to the firm's system after August 2024, (*id.* at 35–36); and that she was asked not to talk to clients, (*id.* at 40).

On the mitigating side of the ledger is Galindo's lack of prior disciplinary history. (24-mc-96, Doc. 41 at 9.) So is his frank concession at the hearing that his business model of burdening too few lawyers with too many cases made it difficult for the lawyers to handle the cases competently, (24-mc-96, Doc. 30 at 43–44), as well as the action he has taken to correct it. Since the hearing, GLF has withdrawn from a number of the Hurricane Ida cases and allowed another firm to represent the plaintiffs.[23] This is a concrete recognition of the problem and an attempt to correct it.

Also to his credit, Galindo individually and on behalf of his firm frankly and candidly admitted in his post-hearing briefing that he and GLF "failed to supervise Dorothy Tarver and

---

[23] According to Galindo and GLF, Michal Harris is GLF's remaining lawyer handling GLF cases in Louisiana. (24-mc-96, Doc. 41-1 at 1.) Harris "now handles [GLF's] remaining federal cases—three in the Middle District, one in the Western District, and two in the Eastern District." (24-mc-96, Doc. 41 at 9.) The Court notes, however, that since Galindo and GLF filed their post-hearing brief, the Louisiana Supreme Court granted the Louisiana Office of Disciplinary counsel's Petition for Interim Suspension [of Michal J. Harris] for Threat of Harm. *In re Michal J. Harris*, 414 So. 3d 484. Pursuant to Middle District Local Rule 83(b)(2), Harris was suspended indefinitely from practice before the Middle District on July 23, 2025. *In re: Michal J. Harris*, No. 25-mc-00078, (M.D. La. July 23, 2025).

42

thereby violated Louisiana Rule of Professional Conduct 5.1." (24-mc-96, Doc. 41 at 1.) He admits that he "requir[ed] her to communicate with clients only through documented firm systems and work in coordination with other lawyers, while simultaneously implementing access restrictions to those same systems." (*Id.* at 3.) He acknowledges that his actions "w[ere] inadequate and created a representation gap—Ms. Tarver remained counsel of record but lacked adequate access to perform her duties efficiently." (*Id.* at 4.) He concedes that the "central mistake" made was "attempting to address Ms. Tarver's performance issues by restricting her access to firm systems while keeping her as counsel of record." (*Id.* at 8.) While he characterizes this as "*[t]he firm's* central mistake," he acknowledges in the preceding line—and the record bears out—that these were Galindo's mistakes. (*Id.* (emphasis added).) Finally, he admits specifically that he and GLF violated Rule 5.1(a) and 5.1(b). (*Id.* at 4–6.)

However, as noted above, the Court rejects Galindo's argument that the highly unusual and unethical arrangement was intended to "address the operational issues," (*id.* at 3), and were "corrective measures" intended to address Tarver's "performance failures," (*id.* at 7). The Court finds this explanation nonsensical and contrary to the credible evidence. It is clear to the Court that Galindo ordered Tarver to remain counsel of record but to quit working on her cases in any meaningful way so that GLF could maintain control of her defense in the *Connelley* disciplinary matter and ensure her cooperation in connection therewith. In exchange for GLF continuing to pay her salary plus her legal fees in *Connelley*, Tarver agreed to "take one for the team" in *Connelly* and "not to throw [GLF] under the bus." (24-mc-96, Doc. 30, Tr. at 59.) The Court counts this as an aggravating factor.

   e. <u>Sanctions for Galindo and GLF</u>

43

Given the totality of the circumstances, Galindo is precluded from applying for admission to the United States District Court for the Middle District of Louisiana or from supervising attorneys who are admitted in this district for a period of two (2) years, effective as of the date of this Order. In addition, Galindo will attend an additional eight (8) hours of Professionalism CLE over a twenty-four (24) month period, in addition to the minimum required in his respective states of licensure. Galindo will provide a statement attesting to his completion of the Professionalism CLE required by this Order within fourteen (14) days of the end of the twenty-four (24) month period.

Given the totality of the circumstances, Galindo and the GLF will pay the attorney's fees of Jonathan E. Ley and Michael E. Hill of the firm of Kelley Kronenberg, PA, 400 Poydras Street, New Orleans, La. 70130 in connection with the Motion to Enforce Settlement Agreement (23:828, Doc. 19), Motion for Status Conference (23:828, Doc. 22), and preparation for and attendance at the Zoom status conference held on February 11, 2025 (23:828, Doc. 26) in *Boudreaux*. The matter of the appropriate attorney's fees to be awarded will be referred to the Magistrate Judge for briefing and recommendation.

Given the totality of the circumstances, Galindo and GLF will pay a fine to the United States District Court for the Middle District of Louisiana in the amount of two thousand five hundred dollars ($2,500.00) which shall be due within thirty (30) days of this Order.

## IX.   CONCLUSION

Accordingly,

**IT IS ORDERED** that **DOROTHY L. TARVER'S** admission to practice in the United States District Court for the Middle District of Louisiana is hereby **SUSPENDED** for a period of eleven (11) months, effective as of the date of this Order.

44

**IT IS FURTHER ORDERED** that **CRISTOBAL M. GALINDO** is precluded from applying for admission to the United States District Court for the Middle District of Louisiana or from supervising attorneys who are admitted in this district for a period of two years, effective as of the date of this ruling and order.

**IT IS FURTHER ORDERED** that **CRISTOBAL M. GALINDO** and the **GALINDO LAW FIRM** will pay the attorney's fees of Jonathan E. Ley and Michael E. Hill of the firm of Kelley Kronenberg, PA, 400 Poydras Street, New Orleans, La. 70130, in connection with the Motion to Enforce Settlement Agreement (Doc. 19), Motion for Status Conference (Doc. 22), and preparation for and attendance at the Zoom status conference held on February 11, 2025 (Doc. 26) in the case of *Boudreaux v. Tower Hill Prime Insurance Company*, No. 3:23-cv-00828-JWD-RLB. The matter of the appropriate attorney's fees to be awarded will be referred to the Magistrate Judge for briefing and recommendation.

**IT IS FURTHER ORDERED** that the **CRISTOBAL M. GALINDO** and the **GALINDO LAW FIRM** will pay a fine to the United States District Court for the Middle District of Louisiana in the amount of two thousand five hundred dollars ($2,500.00), which shall be due within thirty (30) days of this Order.

**IT IS FURTHER ORDERED** that **DOROTHY L. TARVER** and **CRISTOBAL M. GALINDO**, will attend an additional eight (8) hours of Professionalism CLE over a twenty-four (24) month period, in addition to the minimum required in their respective states of licensure. Tarver and Galindo will provide a statement attesting to their completion of the Professionalism CLE required by this Order within fourteen (14) days of the end of the twenty-four (24) month period.

**IT IS FURTHER ORDERED** that the United States District Court for the Eastern District of Louisiana and the United States District Court for the Western District of Louisiana as well as the Louisiana Attorney Disciplinary Board and the Texas Commission for Lawyer Discipline be notified of this Order.

Signed in Baton Rouge, Louisiana, on <u>November 26, 2025</u>.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**